**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| FEDEX CORPORATE SERVICES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| ROAMBEE CORP. | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff FedEx Corporate Services, Inc. ("FedEx, "Plaintiff"), by counsel and pursuant to Federal Rule of Civil Procedure 8, hereby alleges the following in support of its Complaint against Roambee Corporation ("Roambee" or "Defendant") for Patent Infringement:

**NATURE OF THE ACTION**

1.     This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, of U.S. Patent No. 7,623,033 ("the '033 patent"), U.S. Patent No. 8,766,797 ("the '797 patent"), U.S. Patent No. 9,182,231 ("the '231 patent"), U.S. Patent No. 9,974,042 ("the '042 patent"), U.S. Patent No. 10,305,744 ("the '744 patent"), and U.S. Patent No. 10,313,199 ("the '199 patent") (collectively, "the Asserted Patents"), owned by Plaintiff. Plaintiff asserts these patents against Roambee for, *inter alia*, the unauthorized making, using, offering to sell, selling, and/or importing of instrumentalities practicing the subject matter claimed in the Asserted Patents ("Accused Instrumentalities").

**PARTIES**

2.     Plaintiff FedEx is a corporation organized under the laws of Delaware having its place of business at 30 FedEx Pkwy, 1st Fl. Vertical, Collierville, TN 38017.

3.      On information and belief, Defendant Roambee is a corporation organized under the laws of the State of Delaware having a place of business at 3120 De La Cruz Blvd., Suite 210, Santa Clara, California 95054. Roambee has appointed Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808, as its registered agent for service of process.

## JURISDICTION AND VENUE

4.      This action arises under the patent laws of the United States, Title 35 U.S.C. §§ 1, *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

5.      This Court has personal jurisdiction over Defendant because Defendant is incorporated in the State of Delaware.

6.      This Court has personal jurisdiction over Defendant because Defendant has established minimum contacts with the forum such that the exercise of personal jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

7.      On information and belief, Defendant has regularly and purposefully availed itself of the privilege of conducting business activities within Delaware and this Judicial District. On information and belief, Defendant has purposefully availed itself of the rights and benefits of Delaware law and has engaged in systematic and continuous contacts with Delaware. On information and belief, Defendant derives substantial revenue from the sale of infringing products and/or services in Delaware and has availed itself of the privilege of conducting business within Delaware.

8.      On information and belief, personal jurisdiction is proper because Roambee has committed acts of infringement in this Judicial District. This Court has personal jurisdiction over Defendant because, *inter alia*, this action arises from activities Defendant directed towards Delaware.

2

9.      Exercising personal jurisdiction over Defendant in this District would not be unreasonable given Defendant's contacts in this District, the interest in this District of resolving disputes related to products and/or services sold herein, and the harm that would occur to Plaintiff FedEx, a Delaware corporation.

10.     On information and belief, Defendant Roambee has appointed Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808, as its registered agent.

11.     This Court has personal jurisdiction over Defendant under 10 Del. C. § 3104. On information and belief, Defendant satisfies at least § 3104(c)(1) ("[t]ransacts any business or performs any character of work or service in the State"), § 3104(c)(2) ("[c]ontracts to supply services or things in this State,") § 3104(c)(3) ("[c]auses tortious injury in the State by an act or omission in this State"), and/or § 3104(c)(4) ("[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State"), among other paragraphs of § 3104(c).

12.     For these and other reasons that will be presented to the Court if jurisdiction is challenged, the Court has personal jurisdiction over Defendant.

13.     Venue is proper under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) because Defendant is incorporated in the State of Delaware and thus resides in this Judicial District, and the infringing activity has occurred and continues to occur in this Judicial District.

## **FACTUAL BACKGROUND**

14.     The United States Patent and Trademark Office ("USPTO") lawfully issued the '033 patent on November 24, 2009. The '033 patents bears the title "Methods and Systems for Tracking Items Using a Sensor Web." A true and accurate copy of the '033 patent is attached as Exhibit 1.

15.     Plaintiff FedEx is the owner and assignee of all rights, title, and interest in the '033 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

16.     The USPTO lawfully issued the '797 patent on July 1, 2014. The '797 patent bears the title "Sensor Based Logistics System." A true and accurate copy of the '797 patent is attached as Exhibit 2.

17.     Plaintiff FedEx is the owner and assignee of all rights, title, and interest in the '797 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

18.     The USPTO lawfully issued the '231 patent on November 10, 2015. The '231 patent bears the title "Hierarchical Sensor Network for a Grouped Set of Packages Being Shipped Using Elements of a Wireless Node Network." A true and accurate copy of the '231 patent is attached as Exhibit 3.

19.     Plaintiff FedEx is the owner and assignee of all rights, title, and interest in the '231 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

20.     The USPTO lawfully issued the '042 patent on May 15, 2018. The '042 patent bears the title "Node-Enabled Monitoring of a Piece of Equipment Using a Hierarchical Node Network." A true and accurate copy of the '042 patent is attached as Exhibit 4.

21.     Plaintiff FedEx is the owner and assignee of all rights, title, and interest in the '042 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

22.     The USPTO lawfully issued the '744 patent on May 28, 2019. The '744 patent bears the title "System, Apparatus, and Methods of Event Monitoring for an Event Candidate Related to an ID Node Within a Wireless Node Network." A true and accurate copy of the '744 patent is attached as Exhibit 5.

23.     Plaintiff FedEx is the owner and assignee of all rights, title, and interest in the '744 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

24.     The USPTO lawfully issued the '199 patent on June 4, 2019. The '199 patent bears the title "Systems, Apparatus, and Methods of Enhanced Management of a Wireless Node Network Based Upon an Event Candidate Related to Elements of the Wireless Node Network." A true and accurate copy of the '199 patent is attached as Exhibit 6.

25.     Plaintiff FedEx is the owner and assignee of all rights, title, and interest in the '199 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

**Plaintiff FedEx Corporate Services, Inc.**

26.     FedEx has long been a pioneer in the package delivery and logistics fields, beginning in 1971 with the founding of Federal Express Corporation by Frederick W. Smith. FedEx has also been an industry leader in sensor-based logistics, providing advanced tracking of shipments (including urgent and high value packages) through its proprietary technology, including "SenseAware." *See, e.g., FedEx to Transform Package Tracking with SenseAware ID, the Latest Innovation in FedEx Sensor Technology*, FEDEX NEWSROOM (Sept. 14, 2020), https://newsroom.fedex.com/newsroom/senseaware-id/. SenseAware provided the industry a groundbreaking service that combined a multi-sensor device and a web-based collaboration platform to provide real-time monitoring of shipments. *See, e.g., FedEx Introduces SenseAware,*

5

*the Next Generation Supply Chain Information Platform*, FEDEX NEWSROOM (Nov. 17, 2009), https://newsroom.fedex.com/newsroom/fedex-introduces-senseaware-the-next-generation-supply-chain-information-platform/. FedEx's SenseAware won the 2013 Supply Chain Integrity Innovator of the Year category at the Cool Chain Logistics Europe Excellence Awards in Basel, Switzerland, for its proprietary SenseAware technology. *FedEx Express Launches SenseAware in Europe*, FEDEX NEWSROOM (Feb. 10, 2014), https://newsroom.fedex.com/newsroom/fedex-express-launches-senseaware-in-europe/.

27.     Among other things, SenseAware provides end-to-end journey monitoring of shipments' location, temperature, light exposure, relative humidity, shock, and barometric pressure. *How It Works*, SENSEAWARE: A FEDEX INNOVATION, https://www.senseaware.com/how-it-works/ (last visited Jan. 13, 2021). Using the SenseAware platform, users can customize various thresholds associated with these monitored conditions and control when and how they receive alerts regarding their inventory and shipments. *Id.* This insight into a shipment's journey provides much needed peace-of-mind to customers transporting highly sensitive goods, such as vaccines and critical lab tests. *FedEx Forum Spotlights "Delivering Healthcare Solutions Around the Globe,"* FEDEX NEWSROOM (Oct. 22, 2013), https://newsroom.fedex.com/newsroom/fedex-forum-spotlights-delivering-healthcare-solutions-around-the-globe/. Consequently, customers have also trusted SenseAware to monitor high-profile shipment items, including for example the Lombardi Trophy and "The Nation's T-Rex." *FedEx Delivers Vince Lombardi Trophy to Atlanta In Advance of Super Bowl LIII*, FEDEX NEWSROOM (Jan. 26, 2019), https://newsroom.fedex.com/newsroom/fedex-delivers-vince-lombardi-trophy-to-atlanta-in-advance-of-super-bowl-liii/; *FedEx Delivers Rare T. Rex Skeleton to Smithsonian*, FEDEX

NEWSROOM (Apr. 23, 2014), https://newsroom.fedex.com/newsroom/fedex-delivers-rare-t-rex-skeleton-to-smithsonian/.

28.      FedEx has protected its advances in technologies, including those associated with SenseAware, and shared their benefits with the public through robust investment in the US patent system. To date, FedEx owns dozens of patents protecting its SenseAware technology and related advancements in shipment monitoring. The pioneering work of FedEx substantially predates Roambee (first founded in 2013) and, in fact, laid the foundation upon which Roambee's asset tracking business later based itself.

**Defendant Roambee**

29.      Roambee began selling its asset monitoring products and services in 2014. *About Us*, ROAMBEE, https://www.roambee.com/about/journey/ (last visited Jan. 13, 2021). Roambee markets itself as providing an end-to-end visibility solution for goods and assets monitoring, featuring a family of wireless devices and a centralized software platform. *See, e.g.*, *Frequently Asked Questions*, ROAMBEE, https://www.roambee.com/faq/ (last visited Jan. 13, 2021). Roambee represents that its tracking devices monitor, among other things, location, temperature, light exposure, humidity, shock, and barometric pressure. *See, e.g.*, *Roambee Plugs Into Your Enterprise: Create Your Own Integration*, ROAMBEE, https://www.roambee.com/integrations/ (last visited Jan. 13, 2021) (*see* under the expandable "Sensor" tab). Roambee also markets that customers can customize alerts associated with monitored conditions. *See, e.g.*, *Frequently Asked Questions*, ROAMBEE, https://www.roambee.com/faq/ (last visited Jan. 13, 2021) (*see* under the expandable "What Types of Alerts Will I Receive?" tab). Roambee also represents that it provides all necessary hardware, software, connectivity data, and reporting tools to its customers. *See, e.g.*, *id.* The Accused

Instrumentalities are, consequently, regularly deployed on-site within the premises of its customers.

30.     Roambee has and continues to make, use, sell, offer to sell, and/or import into the United States Accused Instrumentalities infringing the claims of the Asserted Patents. By way of nonlimiting example, the Accused Instrumentalities include (alone and/or in various combinations) the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services.

## FIRST CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 7,623,033

31.     The allegations of Paragraphs 1-30 are incorporated by reference as if fully set forth herein.

32.     The '033 patent is valid and enforceable.

33.     By way of example, claim 1 of the '033 patent addresses technical problems and provides "a method for tracking items." '033 patent, Ex. 1, 16:2. As one nonlimiting example, prior systems "only allow[ed] for basic tracking information and [did] not provide a way to improve asset management using information about the environment." *Id.*, 1:60-63. These unsophisticated systems produced incomplete information, resulting in damage or loss of valuable assets, and missed opportunities to take appropriate action to correct, for example, a temperature overage. *See id.*, 1:60-63, 9:53-10:2, 10:38-41. The claimed method overcomes these problems by, among other things, automatically "detecting sensor data about an environment of the beacon device . . . and transmitting the associated sensor data from the beacon device to a database." *Id.*, 16:10-17.

8

34.     Further, the method recited in claim 1 of the '033 patent includes specific technological improvements to tracking physical items within an area based on triggering events such as:

> storing, in memory, first association data reflecting an association between an item tracking device and a beacon device when the item tracking device is within a predetermined range of the beacon device;
>
> detecting sensor data about an environment of the beacon device; [and]
>
> associating the sensor data with a group of items, of the multiple items, that are within the predetermined range of the beacon device[.]

*Id.*, 16:3-14. Prior to the claimed invention, it was not routine and conventional to associate "an item tracking device and a beacon device" in a sensor web based on triggering information that "the item tracking device is within a predetermined range of the beacon device," as recited in claim 1. *Id.*, 16:3-6. This improves monitoring efficiency and effectiveness of tracking devices within a specific physical area, such as within a truck. *See id.* 4:57-5:16.

35.     By associating devices using the unconventional method of claim 1, for example, a tracking center can "[leverage] the surrounding environment (e.g., using sensor data from one sensor to describe the environment of multiple items) [and] remove[] duplication of capture and drive[] the cost down for each instance of data acquisition." *Id.* 3:12-15. Moreover, the claimed method "build[s] a strong information web surrounding the item being tracked," *id.*, 3:4-5, lowering cost and resulting in more complete and richer automated data collection and reporting that describes a tracked item, *id.* 3:8-11. A tracking system implementing the method of claim 1 employs a technological solution to solve the technological problem of filling data gaps in tracking data when a subset of tracking devices lacks certain types of sensors, for example. *Id.*, 9:20-38. This approach enables a tracking system to "leverage (e.g., use sensor data from one device to

describe the environment of multiple items) sensor data from the beacon device to provide more information on the environment of the item being tracked than was previously possible." *Id.*, 9:20-25.

36.     In addition, the claimed method solves technical problems rooted in computer technology by acting as network gateways for item-level tracking devices and providing an "interface to [a] network." *See id.*, 4:16-19, 6:10-19, 16:2-16 (claim 1). This approach was not routine and conventional, and it enables a "beacon device" to serve as a relay for sensor data from item-level tracking devices. *See id.*, 4:16-19, 6:10-19, 16:2-16 (claim 1).

37.     Roambee, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '033 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '033 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. Roambee's infringing instrumentalities include, but are not limited to, the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services. A claim chart setting forth nonlimiting examples of Roambee's infringement accompanies this Complaint as Exhibit 7, herein incorporated by reference.

38.     Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '033 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use the Accused Instrumentalities, including without limitation the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal,

Honeycomb Cloud server, and BeeCentral products and other products and services to directly infringe the '033 patent.

39.    Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '033 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services. These instrumentalities constitute a material part of the invention of the '033 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

40.    Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '033 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services, without authority. These instrumentalities constitute at least a component part of the invention of the '033 patent, are especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these instrumentalities are so made or adapted and actively induces and

intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

41.     Defendant has had actual knowledge of the '033 patent at least since the filing of this complaint detailing Roambee's infringement. Plaintiff is entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for Roambee's infringement. Roambee's ongoing infringement is willful and deliberate, as Roambee became aware of the infringing nature of the Accused Instrumentalities at least since the filing of this complaint.

42.     Plaintiff has been and continues to be damaged and irreparably harmed by Roambee's infringement of the '033 patent. This irreparable harm will continue unless this Court enjoins Defendant.

43.     Roambee's conduct in infringing the '033 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## SECOND CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 8,766,797

44.     The allegations of Paragraphs 1-43 are incorporated by reference as if fully set forth herein.

45.     The '797 patent is valid and enforceable.

46.     By way of example, claim 1 of the '797 patent addresses technical problems and provides "[a] computer-implemented method for accessing information regarding one or more shipments." '797 patent, Ex. 2, 25:2-3. The claimed technology includes "an input unit configured to receive sensor information associated with one or more shipments." *Id.*, 27:17-18. The '797 patent explains that a tracking center can receive and store sensor data via multiple pathways, including directly from remotely deployed sensor devices. *Id.*, 4:10-20. The claimed method meets the need for a system that can provide remote sensor data to client devices in real-time, thereby

12

presenting a technologically improved alternative to previous shipment tracking systems, such as existing bar code, RFID, or sensor-based systems. *Id.*, 1:44-29.

47.     Further, prior technologies lacked sophisticated abilities to securely and selectively grant access to monitoring data while limiting specificity of data provided to authorized users. *See id.*, 2:11-29. The claimed technological solution enhances data security by selectively granting remote parties' access to data via a network on a restricted basis, thereby complying with security or privacy requirements for data sharing. *Id.*, 2:11-29, 11:49-62, 16:57-64, 25:2-16. Claim 1 recites, for example:

> analyzing rules associated with a party to determine whether the party is authorized to access the received sensor information; and
>
> restricting the party from accessing the received sensor information based on the analyzed rules[.]

*id.*, 25:7-11. As explained in the specification, these technical features allow parties to "collaborate with other business partners" while "prevent[ing] other [unwanted] parties from accessing the information." *See id.*, 8:12-33. Prior tracking systems failed to provide such mechanisms for controlling data access, leaving parties uncertain of the location, condition, or integrity of a shipment. *See id.*, 1:38-29.

48.     The claimed method was not routine and conventional at the time of filing. For example, the method of claim 1 improves computer functioning by selectively filtering access requests and "reporting the received sensor information to the party at a level of specificity that is less than a level of specificity of sensor information collected by a sensor associated with the one or more shipments," *Id.*, 25:12-16, a feature that prior systems lacked, *see id.*, 1:38-2:29. This method is rooted in computer technology using, in some nonlimiting examples, a "certificate server" and a "rules engine" to authenticate requests and provide selective data access. *Id.*, 6:38-55.

The method of claim 1 protects data security around shipping network visibility, for example. *Id.*, 16:57-64.

49.     Roambee, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '797 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '797 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. Roambee's infringing instrumentalities include, but are not limited to, the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services. A claim chart setting forth certain nonlimiting examples of Roambee's infringement accompanies this Complaint as Exhibit 8, herein incorporated by reference.

50.     Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '797 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services to directly infringe the '797 patent.

51.     Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '797 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the BeeSense Air, BeeAsset, BeeTrac, BeeBeacon Plus, BeeAware, BeeBeacon Aware, BeeBeacon Sense, BeeCentral, BeeFleet,

BeeLock, BeeRouter, BeeSense, BeeMobile, and Mobile as a Bee, and Honeycomb products and services. These instrumentalities constitute a material part of the invention of the '797 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

52.     Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '797 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the BeeSense Air, BeeAsset, BeeTrac, BeeBeacon Plus, BeeAware, BeeBeacon Aware, BeeBeacon Sense, BeeCentral, BeeFleet, BeeLock, BeeRouter, BeeSense, BeeMobile, and Mobile as a Bee, and Honeycomb products and services, without authority. These instrumentalities constitute at least a component part of the invention of the '797 patent, are especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

53.     Defendant has had actual knowledge of the '797 patent at least since the filing of this complaint detailing Roambee's infringement. Plaintiff is entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for Roambee's infringement. Roambee's ongoing infringement is willful and deliberate, as Roambee became aware of the infringing nature of the Accused Instrumentalities at least since the filing of this complaint.

54. Plaintiff has been and continues to be damaged and irreparably harmed by Roambee's infringement of the '797 patent. This irreparable harm will continue unless this Court enjoins Defendant.

55. Roambee's conduct in infringing the '797 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

### THIRD CAUSE OF ACTION

### INFRINGEMENT OF U.S. PATENT NO. 9,182,231

56. The allegations of Paragraphs 1-102 are incorporated by reference as if fully set forth herein.

57. The '231 patent is valid and enforceable.

58. The '231 patent addresses several technical problems in the fields of logistics, shipping, and package or asset tracking and management. *See, e.g.*, Ex. 3, 211:60-65. For example, existing asset tracking systems typically employed barcodes to track packages, equipment, or other assets. *See, e.g., id.*, 1:49-2:4. The barcodes would become scanned when assets departed or arrived at a certain facility or passed through a checkpoint. *See, e.g., id.* This approach resulted in delayed and inefficient data collection because, among other things, it required physically scanning the barcodes. *See, e.g., id.*, 2:4-7. Other tracking techniques, such radio-frequency identification ("RFID") tracking, presented similar problems. And still other sensor-based systems, prior to the claimed invention, suffered technical problems stemming from the relative complexity to implement them, while still offering extraneous, redundant, or otherwise unhelpful information. *See, e.g., id.*, 2:22-37.

59. The '231 patent provides technical and unconventional solutions to these and other problems by enabling an efficient and granular object tracking and management system. In one aspect, the '231 patent provides a network of nodes including an ID node and a master node. *See,*

*e.g., id.*, 1:15-21; 2:53-59; 11:27-36; 12:39-48, 211:20-45. The ID node may be associated with and configured to monitor a package, while the master node is configured to communicate separately with the ID node and a server. *See, e.g., id.*, 1:15-21; 2:53- 3:26; 11:27-12:10; 12:66-13:11, 211:36-47. ID nodes may be devices with limited connectivity capabilities. *See, e.g., id.*, 11:40-65; 12:49-65, 211:36-40. The '231 patent claims provide a solution to using such devices to efficiently monitor, for example, multi-piece shipments:

> Those skilled in the art will appreciate that the described embodiments illustrate an improved way to monitor a grouped set of packages being shipped, and that such an enhancement fundamentally effects an improvement in the management technology of how to manage, track, locate, and monitor the packages via a hierarchical sensor network as deployed in business operations, such as logistics, shipping management, and inventory management. Such an enhanced ability to monitor a grouped set of packages being shipped as packages are grouped or further organized into other containers facilitates improved logistics, shipping management, inventory management, and the like related to the grouped set of packages. In other words, the exemplary embodiments described herein with interrelated operations between a server, a mobile master node, and an ID node provide a type of specially-adapted system that enhances and improves monitoring operations in technical fields such as logistics, shipping management, inventory management, and the like where wireless nodes in a hierarchical sensor network may be deployed.

*Id.,* 211:48-67.

60.    The '231 patent's implementation of a node network thus provides significant technical advances over prior systems because it enables devices to be deployed and dynamically controlled to provide robust data and tracking at an individual object level. *See, e.g., id.*, 11:40-65; 12:49-65; 12:66-13:2; 211:20-67. The combination of elements described and claimed in the '231 patent was thus unknown in the prior art and provided significant advantages over prior art systems.

61.     Roambee, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 26 of the '231 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '231 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. Roambee's infringing instrumentalities include, but are not limited to, the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services. A claim chart setting forth certain nonlimiting examples of Roambee's infringement accompanies this Complaint as Exhibit 9, herein incorporated by reference.

62.     Defendant has indirectly infringed and continues to indirectly infringe at least claim 26 of the '231 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services to directly infringe the '231 patent.

63.     Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 26 of the '231 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services. These instrumentalities constitute a material part of the invention of the

'231 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

64.     Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 26 of the '231 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services. These instrumentalities constitute at least a component part of the invention of the '231 patent, are especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

65.     Defendant has had actual knowledge of the '231 patent at least since the filing of this complaint detailing Roambee's infringement. Plaintiff is entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for Roambee's infringement. Roambee's ongoing infringement is willful and deliberate, as Roambee became aware of the infringing nature of the Accused Instrumentalities at least since the filing of this complaint.

66.     Plaintiff has been and continues to be damaged and irreparably harmed by Roambee's infringement of the '231 patent. This irreparable harm will continue unless this Court enjoins Defendant.

67.     Roambee's conduct in infringing the '231 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

**FOURTH CAUSE OF ACTION**

**INFRINGEMENT OF U.S. PATENT NO. 9,974,042**

68.     The allegations of Paragraphs 1-55 are incorporated by reference as if fully set forth herein.

69.     The '042 patent is valid and enforceable.

70.     The '042 patent addresses several technical problems in the field of package or asset tracking and management. For example, existing asset tracking systems typically employed barcodes to track packages, equipment, or other assets. *See, e.g.*, Ex. 4, 1:49-2:4. The barcodes would be scanned when assets departed or arrived at a certain facility or passed through a checkpoint. *See, e.g.*, *id.* This approach resulted in delayed and inefficient data collection because it required manual scanning of the barcodes. *See, e.g.*, *id.*, 2:4-7. Other methods, such as those using radio-frequency identification ("RFID") tracking, presented similar problems.

71.     The '042 patent provides a technical and unconventional solution to these and other problems with an efficient and granular object tracking and management system. In one aspect, the '042 patent provides a network of nodes including an ID node and a master node. *See, e.g.*, *id.*, 1:15-21; 2:53-59; 11:12-62. The ID node may be associated with and configured to monitor aspects related to any device, while the master node is configured to communicate separately with the ID node and a server. *See, e.g.*, *id.*, 1:15-21; 2:53- 3:26; 11:12-62; 12:35-36; 12:53-56. ID nodes may be devices with limited connectivity capabilities that can be associated with, and provide data about, an object. *See, e.g.*, *id.*, 11:41-62; 12:36-52. The '042 patent provides a solution to using such devices while efficiently monitoring and leveraging the data retrieved to take actions. For example, the '042 patent explains that:

Embodiments of a wireless hierarchical node network may be further applied to equipment monitoring situations where enhanced tracking and visibility may be desired. In more detail, exemplary ID nodes, exemplary master nodes, and an exemplary server operating in a hierarchy as a wireless node network provide the capacity for improved tracking and enhanced visibility to the location of items associated with such nodes (e.g., whether inside or outside of structures and containers). And when leveraging the sensing capabilities of some of such exemplary nodes, it provides the capacity to know what is going on with items to which the exemplary nodes are associated. For example, when a piece of equipment is being monitored using such a hierarchical node network, the monitoring system is able to leverage this enhanced tracking and visibility into what is going on and where to identify an actionable event so that a responsive action may be taken at the appropriate time and with the appropriate scope of action.

*Id.*, 235:57-236:8; *see also id.*, 1:15-21; 11:11-62; 12:36-52; 12:53-56. Such capabilities, reflected in the claims, provide significant technical advances over prior systems because they provide robust data collection and tracking capabilities at an individual object level. *See, e.g.*, *id.*, 1:25-38, 11:11-62; 235:57-236:8. The '042 patent claims also provide an unconventional, technical solution to the foregoing issues by, among other things, enabling such an object monitoring system using it unique network of devices in communication with a more a complex master node, which communicates with a server. *See, e.g.*, *id.*, 1:15-38, 11:11-12:56; 235:57-236:8. The combination of elements described and claimed in the '042 patent was thus unknown in the prior art and provided significant advantages over prior art systems.

72.     Roambee, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '042 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '042 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. Roambee's infringing instrumentalities include, but are not limited to, the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee

portal, Honeycomb Cloud server, and BeeCentral products and other products and services. A claim chart setting forth certain nonlimiting examples of Roambee's infringement accompanies this Complaint as Exhibit 10, herein incorporated by reference.

73.     Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '042 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services to directly infringe the '042 patent.

74.     Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '042 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services. These instrumentalities constitute a material part of the invention of the '042 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

75.     Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '042 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Roambee BeeBeacon, BeeBeacon Plus,

BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services, without authority. These instrumentalities constitute at least a component part of the invention of the '042 patent, are especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

76.     Defendant has had actual knowledge of the '042 patent at least since the filing of this complaint detailing Roambee's infringement. Plaintiff is entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for Roambee's infringement. Roambee's ongoing infringement is willful and deliberate, as Roambee became aware of the infringing nature of the Accused Instrumentalities at least since the filing of this complaint.

77.     Plaintiff has been and continues to be damaged and irreparably harmed by Roambee's infringement of the '042 patent. This irreparable harm will continue unless this Court enjoins Defendant.

78.     Roambee's conduct in infringing the '042 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

### FIFTH CAUSE OF ACTION

### INFRINGEMENT OF U.S. PATENT NO. 10,305,744

79.     The allegations of Paragraphs 1-78 are incorporated by reference as if fully set forth herein.

80.     The '744 patent is valid and enforceable.

81.     The '744 patent addresses several technical problems in the fields of inventory management and package tracking. *See, e.g.*, Ex. 5, 3:17-29. For example, existing asset tracking systems typically employed barcodes to track packages, equipment, or other assets. *See, e.g., id.*, 2:15-40. The barcodes would be scanned when assets departed or arrived at a certain facility or passed through a checkpoint. *See, e.g., id*. This approach resulted in delayed and inefficient data collection because, among other things, it required physically scanning of the barcodes. *See, e.g.*, *id*., 2:37-40. Other methods, such as those using radio-frequency identification ("RFID") tracking, presented similar problems.

82.     The '744 patent provides technical and unconventional solutions to these and other problems by enabling an efficient and granular object tracking and management system. In one aspect, the '744 patent provides a wireless network of nodes including an ID node and a master node. *See, e.g.*, *id.*, 4:61-5:12; 9:13-41; 10:36-11:3. The ID node may be associated with and configured to monitor a package, while the master node is configured to communicate separately with the ID node and a server. *See, e.g.*, *id.*, 4:61-5:12; 9:13-41; 10:36-11:3. ID nodes may be devices. *See, e.g.*, *id.*, 9:42-47; 10:36-52; 13:10-37. The '744 patent claims provide a solution to using such devices to efficiently monitor packages or other assets:

> "Each of these aspects respectively effect improvements to the technology of server-managed networks of wireless nodes that may, for example, be deployed in logistics applications where nodes are intermediately monitored and tracked by various elements of a wireless node network ( such as a master node) such that the intermediate element can more quickly and efficiently operate while monitoring and reporting significant node-related events up to the managing server for the wireless node network."

*Id.*, 5:13-22.

83.     The '744 patent's implementation of a node network thus provides significant technical advances over prior systems because it enables devices to be deployed and dynamically

controlled to provide robust data and tracking at an individual object level. *See, e.g.*, *id.*, 4:61-5:12; 9:13-41; 10:36-11:3. Specifically, the '744 patent's claimed method includes specific technological improvements to tracking packages using ID nodes and adjusting operation of an ID node based on recognized event candidates:

> identifying, by the master node, the event candidate based upon a comparison of an observed parameter of the first advertising signal and an observed parameter of the second advertising signal;

> reporting, by the master node to the server, the event candidate relative to the first ID node;

> receiving, by the master node, an adjustment response from the server based upon the event candidate, the adjustment response corresponding to node management information resident on the server as responsively adjusted according to the identified event candidate, the adjustment response comprising an adjusted profile for the first ID node; and

> causing, by the master node, an operational update of the first ID node according to the adjustment response received from the server.

*Id.*, 188:22-41. These improvements permit use of ID nodes to monitor packages and provide an efficient method of updating and managing the ID nodes by updating the ID nodes based on detected events. *See, e.g.*, *id.*, 5:13-22. Prior to the claimed invention, conventional sensor-based systems did not offer such efficient use of and updating of devices. *See, e.g.*, *id.*, 2:55-63. The combination of elements described and claimed in the '744 patent was thus unknown in the prior art and provided significant advantages over prior art systems.

84.     Roambee, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 56 of the '744 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '744 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its

customers using the Accused Instrumentalities. Roambee's infringing instrumentalities include, but are not limited to, the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services. A claim chart setting forth certain nonlimiting examples of Roambee's infringement accompanies this Complaint as Exhibit 11, herein incorporated by reference.

85.     Defendant has indirectly infringed and continues to indirectly infringe at least claim 56 of the '744 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services to directly infringe the '744 patent.

86.     Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 56 of the '744 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services. These instrumentalities constitute a material part of the invention of the '744 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

87.    Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 56 of the '744 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services, without authority. These instrumentalities constitute at least a component part of the invention of the '744 patent, are especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

88.    Defendant has had actual knowledge of the '744 patent at least since the filing of this complaint detailing Roambee's infringement. Plaintiff is entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for Roambee's infringement. Roambee's ongoing infringement is willful and deliberate, as Roambee became aware of the infringing nature of the Accused Instrumentalities at least since the filing of this complaint.

89.    Plaintiff has been and continues to be damaged and irreparably harmed by Roambee's infringement of the '744 patent. This irreparable harm will continue unless this Court enjoins Defendant.

90.    Roambee's conduct in infringing the '744 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

27

## SIXTH CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 10,313,199

91.     The allegations of Paragraphs 1-90 are incorporated by reference as if fully set forth herein.

92.     The '199 patent is valid and enforceable.

93.     Exemplary claim 1 of the '199 patent addresses technical problems related to server-based management of distributed wireless networks of sensor nodes. Ex. 6, '199 patent, 186:2-43. The '199 patent explains that the claimed technology "effect[s] improvements to the technology of server-managed networks of wireless nodes that may, for example, be deployed in logistics applications where nodes are intermediately monitored and tracked by various elements of a wireless node network (such as a master node) such that the server is better able to process reported event candidate information on node relevant activity, learn from the reported event candidate information, and provide responsive node management information back to the master node as part of controlling and managing elements of the network." 6:52-62. Thus, the claimed system offers a technological solution to problems relating to data processing and management of hardware (e.g., nodes) in a distributed sensing network.

94.     Indeed, claim 1 recites elements relating to a "master node disposed within the wireless node network and executes an event detection engine code to become operative to generate a report message regarding an event candidate representing an updated status related to a first of the ID nodes, and receive a management message in response to the generated report message." *Id.*, 186:5-12 (claim 1). As the '199 patent explains, prior systems suffered from overloaded and overstressed communication pathways with servers used to manage sensors owing, in part, to the large amounts of generated data. *Id.*, 2:65-3:6. In contrast, the '199 patent's claimed "master node" receives a "management a message," in response to "a report message regarding an

event candidate," allowing the "master node" to be configured in response to "an event" to avoid problems relating to "extraneous and redundant item information" and overstressed resources. *See id.*, 2:62-64, 186:5-12.

95.     The system of claim 1 also includes "a server in communication with the master node over a first communication path, the server maintaining node management information used to control one or more of the ID nodes and the master node as part of managing the wireless node network." *Id.* 186:13-17 (claim 1). Hence, claim 1 provides innovative approaches to server-based management of remote "ID nodes" and a "master node." For example, claim 1 recites additional elements in which the server "extract[s] the event candidate from the report message" of the master node, "generate[s] a confidence rating for the event candidate based upon an evaluation of the event candidate compared to at least a portion of the context data maintained by the server," and "update[s] node management information" accordingly. *Id.* 186:26-43. As the '199 patent explains, the claimed method provides technological, "system-level improvement[s] that lessens the monitoring and reporting burden placed on the monitoring master node." *Id.* 133:39-44. In addition to such efficiencies, the '199 patent explains that, in the claimed system, "the master node may be able to adaptively recognize that an ID node may have an alert status that, once detected, may desirably be handled more quickly or with more frequent updates back to the server so that the server may more efficiently and effectively manage the alert status situation with management feedback to the master node and other control input." *Id.* 103:43-49. Thus, the claims are rooted in computer technology and provide technological solutions to managing hardware and processing data in a distributed wireless sensor system.

96.     Roambee, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '199 patent by making, using, offering to sell, selling, and/or importing the

Accused Instrumentalities practicing the features claimed in the '199 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. Roambee's infringing instrumentalities include, but are not limited to, the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services. A claim chart setting forth certain nonlimiting examples of Roambee's infringement accompanies this Complaint as Exhibit 12, herein incorporated by reference.

97.    Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '199 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services to directly infringe the '199 patent.

98.    Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '199 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services. These instrumentalities constitute a material part of the invention of the '199 patent, are known by Defendant to be especially made or adapted for use in infringing the

30

patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

99.     Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '199 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Roambee BeeBeacon, BeeBeacon Plus, BeeMobile application, BeeSense, BeeSense Air, BeeRouter, BeeFleet, BeeAsset, BeeTrac, BeeLock, BeeFleet, Roambee portal, Honeycomb Cloud server, and BeeCentral products and other products and services, without authority. These instrumentalities constitute at least a component part of the invention of the '199 patent, are especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

100.     Defendant has had actual knowledge of the '199 patent at least since the filing of this complaint detailing Roambee's infringement. Plaintiff is entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for Roambee's infringement. Roambee's ongoing infringement is willful and deliberate, as Roambee became aware of the infringing nature of the Accused Instrumentalities at least since the filing of this complaint.

101.     Plaintiff has been and continues to be damaged and irreparably harmed by Roambee's infringement of the '199 patent. This irreparable harm will continue unless this Court enjoins Defendant.

102.    Roambee's conduct in infringing the '199 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

(a)    A judgment against Roambee as to infringement of one or more claims of each of the Asserted Patents;

(b)    A permanent injunction under 35 U.S.C. § 283, enjoining Roambee and its officers, directors, agents, servants, affiliates, employees, subsidiaries, parents, licensees, assigns, and customers, and all others acting in concert or participation with them, from further acts of infringing, inducing infringement, and/or contributing to the infringement of the Asserted Patents;

(c)    A judgment against Roambee for money damages sustained as a result of Defendant's infringement of the Asserted Patents in an amount to be determined at trial as provided under 35 U.S.C. § 284, including enhanced damages due to, for example, Defendant's willful infringement of the Asserted Patents;

(d)    An accounting for infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales;

(e)    An award of pre-judgment and post-judgment interest on the damages caused by Roambee's infringing activities and other conduct complained of herein;

(f)    A finding that this case is an exceptional case under 35 U.S.C. § 285;

(g)    An award of reasonable attorneys' fees and costs incurred in connection with this action;

(h)    A compulsory future royalty; and

(i)    Any and all other relief as the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully requests trial by jury under Rule 38 of the Federal Rules of Civil Procedure of all issues in this action so triable.

ASHBY & GEDDES

*Of Counsel:*

*/s/ Steven J. Balick*

Jeffrey A. Berkowitz
Michael V. Young, Sr.
Luke H. MacDonald
Bradley T. Edgington
FINNEGAN HENDERSON FARABOW
    GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190
(571) 203-2700
jeffrey.berkowitz@finnegan.com
michael.young@finnegan.com
luke.macdonald@finnegan.com
bradley.edgington@finnegan.com

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Ave., 8th Floor
P.O. Box 1150
Wilmington, DE 19801
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff*

F. Leslie Bessenger III
WITHERS & KEYS, LLP
555 North Point Center East, Suite 400
Alpharetta, GA 30022
(770) 643-8912
les@witherskeys.com

Dated: February 9, 2021